# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MAHESH VEER SATYA TOLAPU, individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, AIDING AND ABETTING, AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| v. | |
| SYNTEL, INC., BHARAT DESAI, PRASHANT RANADE, ARITOSH CHOKSI, THOMAS DOEKE, RAKESH KHANNA, RAJESH MASHRUWALA, VINOD K. SAHNEY, REX E. SCHLAYBAUGH, JR., NEERJA SETHI, and GREEN MERGER SUB INC., | **JURY TRIAL DEMAND** |
| Defendants. | |

Plaintiff Mahesh Veer Satya Tolapu ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Syntel, Inc. ("Syntel" or the "Company"), against Syntel, and the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and for breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Atos, S.E. ("Parent"), and its affiliate Green Merger Sub Inc. (collectively with Parent, "Atos") (Atos, the Board, and the Company are collectively referred to herein as the "Defendants") as a result of an unfair process for an unfair price, and to enjoin the stockholder vote on a proposed stock and cash transaction valued at approximately $3.57 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 23, 2018 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Syntel will become an indirect wholly-owned subsidiary of Atos, and Syntel stockholders will receive $41.00 in cash for every share of Syntel Common stock they own.

3.      Thereafter, on August 7, 2018, Syntel filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.

4.      The Proposed Transaction is an unfair product of the actions of the Company's co-founders and controlling stockholders, to manipulate or subvert the Company's complaint Board of Directors into an agreement to sell the Company to Atos, and only to Atos, for an inadequate price yet on terms that were the most personally beneficial to themselves.  In doing so, Syntel co-founders, husband and wife, Bharat Desai ("Desai") and Neerja Sethi ("Sethi")(collectively, the "Co-Founders"), who together with affiliated entities, own collectively 51.07% of the outstanding stock of Syntel, ensured that they would see maximum personal enrichment from the Proposed Transaction.

5.      Notably, at no point in the Preliminary Proxy, or in the previously filed Annual Proxy Statement filed by the Company on form DEF14A on April 27, 2018, did the Company disclose to its public stockholders that it was a controlled company, and that one family, namely the Co-Founders, controlled more than 50% of the voting stock of Syntel.

6.      It appears as though the Co-Founders have caused the Board to enter into the Proposed Transaction to procure for themselves significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, the Co-Founders will be able to immediately convert their large illiquid holding in the Company into *over $2.1 billion in cash*.

7.      While the Proposed Transaction was purportedly reviewed by a special committee of "independent," non Syntel-employee directors (the "Special Committee"), the sales process that was conducted was flawed, and was manipulated by the Co-Founders to achieve superior

consideration for themselves in the Proposed Transaction. Notably, the Committee did not engage in any competitive bidding process or otherwise conduct a proper market check. The "limited" sales process undertaken was simply a smokescreen designed to feign compliance with fiduciary duties while the Company ensures that Atos, and Atos alone, would emerge as the successful bidder.

8. Defendants breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction which undervalues Syntel and is the result of a flawed sales process.

9. Moreover, the Co-Founders, as Sytnel's controlling stockholder, was required to pursue a transaction that is entirely fair with respect to both price and process. However, the terms of the Proposed Transaction clearly favor the Syntel Co-Founders, who are the beneficiary of disparate treatment not afforded to public stockholders. Moreover, among other defects in price and process of the Proposed Transaction, the Proposed Transaction agreed to by Defendants did not meet the express requirements for review for a merger transaction involving a controlling stockholder.

10. Furthermore, and in violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and in violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy on August 7, 2018 with the SEC in an effort to solicit stockholders to vote their Syntel shares in favor of the Proposed Transaction. The Preliminary Proxy is materially deficient and deprives Syntel stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction. As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b) the financial projections for Syntel, provided by Syntel to the Company's financial advisors Goldman Sachs & Co, LLC ("Goldman Sachs") for use in their financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor Goldman Sachs.

CLASS ACTION COMPLAINT

11.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

**PARTIES**

12.     Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Syntel stockholder.

13.     Defendant Syntel, provides digital transformation, information technology ("IT"), and knowledge process outsourcing ("KPO") services worldwide.  Syntel is incorporated under the laws of the State of Michigan and has its principal place of business at 525 E. Big Beaver Road, Suite 300, Troy, Michigan 48083.  Shares of Syntel common stock are traded on the NasdaqGS under the symbol "SYNT."

14.     Defendant Bharat Desai ("Desai") has been a director of the Company at all relevant times.  In addition, Desai serves as Co-Chairman of the Syntel Board of Directors and is one of the Company's Co-Founders.  Desai is married to Syntel Co-Founder Sethi.

15.     Defendant Neerja Sethi ("Sethi") has been a director of the Company at all relevant times.  In addition, Sethi is a Co-Founder of Syntel.  Sethi is married to Syntel Co-Founder Desai.

16.     Defendant Prashant Ranade ("Ranade") has been a director of the Company at all relevant times.  In addition, Ranade serves as the Co-Chairman of the Syntel Board of Directors.

17.     Defendant Paritosh Choksi ("Choksi") has been a director of the Company at all relevant times.

18.     Defendant Thomas Doeke ("Doeke") has been a director of the Company at all relevant times.

19.     Defendant Rakesh Khanna ("Khanna") has been a director of the Company at all relevant times.  In addition, Khanna serves as the Chief Executive Officer ("CEO") and President of Syntel.

20.     Defendant Rajesh Mashruwala ("Mashruwala") has been a director of the Company at all relevant times.

21.     Defendant Vinod K. Sahney ("Sahney") has been a director of the Company at all relevant times.

22.     Defendant Rex E. Schlaybaugh, Jr. ("Schlaybaugh") has been a director of the Company at all relevant times.

23.     Defendants identified in ¶¶ 14 - 22 are collectively referred to as the "Individual Defendants."

24.     Atos S.E. is a European Public Company that provides information technology services and solutions worldwide.  It offers infrastructure and data management services, including cloud services and digital workplace services, business and platform solutions, big data, and cybersecurity products and services, as well as transactional services.  Atos S.E. keeps its principal place of business at River Quest, 80 Quai Voltaire, Bezons, 95870, France.

25.     Merger sub is a Michigan Corporation and an affiliate of Parent and can be served care of its agent for service of process, Zan Nicolli, 2600 W. Big Beaver Rd., Suite 300, Troy, MI 48984.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

27.     Personal jurisdiction exists over each defendant either because they conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

CLASS ACTION COMPLAINT

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Syntel has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Syntel common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

30.     This action is properly maintainable as a class action because:

a.   The Class is so numerous that joinder of all members is impracticable.  As of June 30, 2018, there were more than 82 million common shares of Syntel stock outstanding.  The actual number of public stockholders of Syntel will be ascertained through discovery;

b.   There are questions of law and fact which are common to the Class, including *inter alia*, the following:

    i.   Whether Defendants have violated the federal securities laws;

    ii.   Whether Defendants made material misrepresentations and/or omitted material facts in the Preliminary Proxy; and

    iii.   Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.   Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

31.   By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Syntel and owe the Company the duties of due care, loyalty, and good faith.

32.   By virtue of their positions as directors and/or officers of Syntel, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Syntel to engage in the practices complained of herein.

33.   Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.   act with the requisite diligence and due care that is reasonable under the circumstances;

b.   act in the best interest of the company;

c.   use reasonable means to obtain material information relating to a given action or decision;

       d.   refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

       e.   avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

       f.   disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

34.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Syntel, are obligated to refrain from:

       a.    participating in any transaction where the directors' or officers' loyalties are divided;

       b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

       c.    unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

35.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Syntel, Plaintiff and the other public stockholders of Syntel, including their duties of loyalty, good faith, and due care.

36.     As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Syntel common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

37.    Syntel provides digital transformation, information technology ("IT"), and knowledge process outsourcing ("KPO") services worldwide.

38.    The Company operates through Banking and Financial Services; Healthcare and Life Sciences; Insurance; Manufacturing; and Retail, Logistics, and Telecom segments.   The Company provides end-to-end, integrated application, and infrastructure management services; develops software applications; and offers legacy modernization services, such as software analysis, language conversion, reverse engineering, database migration, code optimization, cloud onboarding and migration, ecosystem migration, testing, and management.

39.    The Company also provides consulting, implementation, and management services for enterprise architecture, data warehousing, business intelligence, and enterprise application integration, as well as mobility, big data, analytics, and Internet of Things technologies.

40.    In addition, Syntel offers KPO services that provide outsourced solutions for knowledge and business processes.  The company offers its products to various companies in the banking and financial services, healthcare and life sciences, insurance, manufacturing, retail, logistics, and telecom industries.

41.    The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a February 15, 2018 press release announcing its 2017 Q4 and FY financial results, the Company noted such positive results as an increase in revenue for the quarter of 3.7% over the previous quarter.

42.    Company CEO Khanna spoke on these positive results, stating, "I am pleased with our Q4 results and the solid progress we made in strengthening our position at our top 50 customer accounts during 2017."

43.    Defendant Khanna went on to comment on a strong future outlook for Syntel noting that, "In 2018, we will continue to invest in client engagement and in developing

CLASS ACTION COMPLAINT

innovative digital and automation-powered services to help our customers transform their businesses and adapt to a dynamic competitive environment..."

44.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by Syntel.  For example, in an October 17, 2017, press release announcing the Company's 2017 Q3 financial results, Syntel reported such positive results as a 2% sequential increase in net revenue from the previous quarter.

45.     Speaking on these results, Defendant Khana stated, "We continued to deepen our strategic relationships during the third quarter … In particular, contribution from the 4 to 50 client segment grew faster than the overall company."

46.     In addition, those in the financial media have taken note of Syntel's recent upward trajectory.  For example, a June 21, 2018 article in *Zack's Equity Research*, lauded Syntel for being a stock on the rise, hitting a new 52 week high and increasing its value 7.7% over the previous month.

47.     Clearly, based upon these positive financial results, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

48.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Syntel to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

49.     As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Co-Founders, and was designed with only one concern in mind – to effectuate a sale of the Company to Atos.

50.     First and foremost, as stated above, the so-called disinterested directors that made up the Special Committee failed completely in carrying out a proper sales process.  In fact, as noted in the Preliminary Proxy, the Special Committee undertook a "limited sales process," ensuring that only a small number of counterparties were contacted, and thus feigning

CLASS ACTION COMPLAINT

compliance with fiduciary duties. Further exacerbating this "limited sales process," was the fact that no set parameters seemed to be communicated by the Special Committee or the Board to interested bidders in terms of deadlines or rounds of bidding. Such a lax and non-structured sales process necessarily led to the entry into exclusivity with Atos at a time when a third party ("Party B") had also submitted a bid with a premium to Syntel's stock price above 15%. By failing to have defined timelines for bids and consideration, and by entering into exclusivity, Party B was unable to undertake diligence upon Syntel that may have led to a more competitive bid than Atos.

51.     Also belying the Special Committee's obvious end-goal of a Atos deal was the fact that it decided to completely forego outreach to any potentially interested financial bidders based upon a belief that a lack of synergies would suppress interest in such parties. Such a belief immediately proved to be inaccurate, however, as shortly thereafter a potential financial bidder ("Party F") contacted Goldman Sachs to express interest. Despite this outreach, the Special Committee did not revise its approach in an attempt to create a more robust market check.

52.     Moreover, the Preliminary Proxy does not indicate if the Special Committee had the power to approve or deny a bid from an interested third party before such a bid's consideration by the full Board (and necessarily by the Co-Founders).

53.     The Special Committee's full abilities as well as its decision-making process in foregoing a complete and full market check and sales process are relevant and material pieces of information that Plaintiff and public stockholders are entitled to in considering whether to vote in favor of the Proposed Transaction.

54.     Furthermore, the Preliminary Proxy is unclear as to the nature of specific confidentiality and/or non-disclosure agreements Syntel entered into with various third parties and Atos throughout the sales process, if any such agreements were different from one another, the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in those agreements, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid. Moreover, the Preliminary Proxy does not provide the reasoning for the differences between such entered agreements.

CLASS ACTION COMPLAINT

55.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate manner, with an obvious end-goal of an Atos transaction.

**The Proposed Transaction**

56.     On July 22, 2018, Syntel issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **TROY, Mich., July 22, 2018 (GLOBE NEWSWIRE)** -- Syntel, Inc. (Nasdaq:SYNT), a leading global provider of integrated information technology and knowledge process services, today announced that it has entered into a definitive merger agreement with Atos S.E. under which Atos will acquire all outstanding shares of Syntel for $41.00 per share in an all-cash transaction valued at approximately $3.57 billion, including Syntel's net debt.  The transaction was unanimously approved by the full Board of Directors of Syntel based on the unanimous recommendation of a Special Committee of the Board.
>
> Bharat Desai, co-chairman of Syntel said: "This is a very exciting development for Syntel.  The Syntel board is committed to maximizing shareholder value and believes that the agreement with Atos achieves that objective and delivers a win-win proposition to our customers and employees.
>
> Our focus at Syntel is to help customers transform and succeed in the digital economy.  Since its founding, our "Customer for Life" ethos has guided our investments in high-impact, domain-led services and intellectual property.
>
> I am grateful for the trust and confidence of our customers and the passion, commitment and innovative spirit of our employees. Together they have enabled Syntel to achieve great heights.  I am confident that this combination will deliver significant value to all stakeholders."
>
> Thierry Breton, Chairman and CEO of Atos said: "I am very proud to announce such an important milestone in Atos's leadership development with the proposed acquisition of Syntel, a leading digital company, established 38 years ago, that perfectly fits our strategic priorities.  It represents a transformational step for our Business & Platform Solutions Division as it will significantly enhance our growth and profitability profile through an extended digital services offering, cutting-edge India-based delivery platforms, as well as revenue and cost synergies.
>
> In particular, the highly complementary portfolio, customer base, and geographic footprint of the combination between Atos and Syntel will significantly enhance our presence in North America and accelerate the digital transformation of Atos's customers.

CLASS ACTION COMPLAINT

I am looking forward to welcoming the 23,000 Syntel employees and their very strong management to continue delivering together the highest value to our clients and shareholders."

Completion of this transaction is subject to regulatory approvals, approval of Syntel's shareholders and other customary closing conditions. Completion of this transaction is not subject to any financing condition. In connection with the merger agreement, Syntel's founders and certain of their affiliated entities, who collectively own approximately 51.07% of the outstanding Syntel shares, entered into an agreement with Atos to vote their shares in favor of the merger agreement, subject to their right to terminate their obligations in the event the Syntel Board changes its recommendation to shareholders or if the definitive agreement is terminated. The parties expect to close the transaction during the second half of 2018.

Goldman Sachs & Co. LLC is acting as exclusive financial advisor to Syntel and Sullivan & Cromwell LLP is acting as its legal counsel. Jones Day is legal counsel to Syntel's founders. Rothschild & Cie, J.P. Morgan Securities PLC and BNP Paribas Corporate Finance are acting as financial advisors to Atos and Weil, Gotshal and Manges LLP is acting as its legal counsel.

### *The Inadequate Merger Consideration*

57.     Significantly, the Company's financial prospects and opportunities for future growth, and synergistic benefits to Atos, establish the inadequacy of the merger consideration.

58.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company. The proposed valuation does not adequately reflect the intrinsic value of the Company. Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements and increases in net revenue of the Company in recent years.

59.     Moreover, the Company's stock has traded as high as $39.13 per share merely two days before the announcement of the proposed transaction, resulting in a paltry premium to Syntel stockholders.

60.     Additionally, Syntel's future success is extremely likely, given the consistent positive financial results it has posted over the past several quarters. Obviously, the opportunity to invest in such a company on the rise is a great coup for Atos, however it undercuts the investment of Plaintiff and all other public stockholders.

61.     In addition, the Proposed Transaction will bring immediate synergistic benefits to Atos.  Notably, Thierry Breton, Chairman and CEO indicated in the press release announcing the Proposed Transaction that Syntel's "highly complementary portfolio, customer base, and geographic footprint of the combination between Atos and Syntel will significantly enhance our presence in North America and accelerate the digital transformation of Atos's customers."

62.     Clearly, while the deal will be beneficial to Atos it comes at great expense to Plaintiff and other public stockholders of the Company.

63.     Moreover, post-closure, Syntel stockholders will be frozen out of their ownership stake in Syntel, forever disclosing any possibility of reaping the full return on their investment.

64.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Atos at the expense of Syntel stockholders, which clearly indicates that Syntel stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

65.     The Merger Agreement contains certain provisions that unduly benefit Atos by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires Syntel to pay up to $111.5 million to Atos, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Syntel must pay this termination fee even if it consummates any Alternative Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

66.     The Merger Agreement also contains a "No Solicitation" provision that restricts Syntel from considering alternative acquisition proposals by, *inter alia*, constraining Syntel's ability to solicit or communicate with potential acquirers or consider their proposals.

CLASS ACTION COMPLAINT

Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Alternative Acquisition Agreement"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

67.     Moreover, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Atos information in order to match any other offer, thus providing Atos access to the unsolicited bidder's financial information and giving Atos the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Atos.

68.     Additionally, as stated in the Preliminary Proxy, the Co-Founders have entered into voting agreements with Atos, ensuring that all stock held by them and their affiliates, which amount to 51.07% of the outstanding shares of the Company, will be voted in favor of the Proposed Transaction.  Egregiously, there is no "majority of the minority" provision to ensure the rights of Plaintiff and other public stockholders of Syntel in light of these voting agreements. Thus, the Proposed Transaction has been designed by the Co-Founders to ensure, no matter the vote of any or all public stockholders, that the merger will be consummated.

69.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

70.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Conflicts of Interest***

71.     The sales process as indicated in the Preliminary Proxy leading up to the Proposed Transaction indicates serious flaws in the supposed unbiased nature of the decision to enter into the Proposed Transaction.

72.     In addition, the breakdown of the benefits of the deal indicate that Syntel insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public

CLASS ACTION COMPLAINT

stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Syntel.

73. Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction. Notably, Company insiders, including the Co-Founders, currently own large, illiquid portions of Company stock that will be exchanged for significant stakes in the combined corporation upon the consummation of the Proposed Transaction. Members of the Company Board and Management hold Company stock as follows:

| Name and Address of Beneficial Owner | Shares Beneficially Owned | |
| --- | --- | --- |
| | Number | Percent of Class |
| Bharat Desai (1) | 31,586,919 | 38.07% |
| Neerja Sethi (2) (6) | 21,409,945 | 25.80% |
| Rakesh Vij (3) | 19,237,384 | 23.19% |
| NS Trust dated February 28, 1997 I (4) | 9,318,692 | 11.23% |
| NS Trust dated February 28, 1997 II (4) | 9,318,692 | 11.23% |
| Capital Research Global Investors (5) | 4,931,836 | 5.94% |
| Anil Agrawal (6) | 21,446 | * |
| Paritosh K. Choksi (6) | 99,910 | * |
| Thomas Doeke (6) | 30,463 | * |
| Raja Ray (6) | 27,522 | * |
| Rakesh Khanna (6) | 116,458 | * |
| Rajesh Mashruwala (6) | 26,119 | * |
| Daniel M. Moore (6) | 20,963 | * |
| Prashant Ranade (6) | 257,933 | * |
| Vinod K. Sahney (6) | 15,799 | * |
| Rex E. Schlaybaugh, Jr. (6) | 13,990 | * |
| All current directors and executive officers as a group (24 persons)** | 47,910,571 | 57.75% |

74. Of significant note, Desai and Sethi will see personal pay days of more than $*2.1 billion*.

75. Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option, restricted share, RSU, and/or PSU will be canceled and converted into the right to receive cash considerations.

76. Moreover, certain employment agreements with Syntel's executives are entitled to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Syntel's common stockholders.

Specifically, such golden parachute compensation will be paid out to Company insiders as follows:

| Named Executive Officers | Cash ($)[1] | | Equity ($)[2] | | Total ($) | |
|---|---|---|---|---|---|---|
| *Bharat Desai* | $ | 0 | $ | 0 | $ | **0** |
| *Prashant Ranade* | $ | 2,514,649 | $ | 7,155,475 | $ | **9,670,124** |
| *Rakesh Khanna* | $ | 867,754 | $ | 1,753,559 | $ | **2,621,313** |
| *Daniel Moore* | $ | 896,065 | $ | 352,411 | $ | **1,248,476** |
| *Anil Agrawal* | $ | 250,377 | $ | 411,016 | $ | **661,393** |
| *Raja Ray* | $ | 245,800 | $ | 352,780 | $ | **598,580** |

77.     Additionally, Defendant Khanna as well as an as-of-yet known number of other Company executive officers and insiders, will continue in their management roles in the surviving corporation.  Such employment carries with it significant compensation not shared amongst Plaintiff or Syntel's public stockholders.

78.     It is no wonder that, in light of the extremely lucrative profits for themselves, the Co-Founders, and the Board at their behest, allowed the Company to be sold far under its proper value in order to secure a quick sale.

79.     Thus, while the Proposed Transaction is not in the best interests of Syntel stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Preliminary Proxy**

80.     On August 7, 2018, Syntel filed with the SEC a materially misleading and incomplete Preliminary Proxy that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

_Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction_

81.     Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy fails to disclose:

a.   The Preliminary Proxy fails to disclose sufficient information regarding the number and nature of all confidentiality agreements entered into between

Syntel and any interested third party during the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid;

b.  The Preliminary Proxy fails to disclose the basis for the Special Committee's decision to run a "limited sales process;"

c.  The Preliminary Proxy fails to disclose the basis for the Special Committee's decision to continue to not reach out to potentially interested financial third parties after they were contacted by Party F;

d.  The Preliminary Proxy fails to disclose if the Special Committee approval of a bid was required before consideration by the full Syntel Board; and

e.  The Preliminary Proxy fails to supply adequate information to identify the Company insiders (in addition to Defendant Khanna) who will be the benefit of employment retention programs as described on pages 48-49 of the Preliminary Proxy discussing employment and investment arrangements with unnamed Company executives.

_Omissions and/or Material Misrepresentations Concerning Syntel's Financial Projections_

82.    The Preliminary Proxy fails to provide material information concerning financial projections provided by Syntel's management and relied upon by Goldman Sachs' in its analyses.  The Preliminary Proxy discloses management-prepared financial projections for the Company which are materially misleading.  The Preliminary Proxy indicates that in connection with the rendering of Goldman Sachs' respective fairness opinions, the financial advisors utilized such information.  Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that Syntel management provided to the Board and Goldman Sachs.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of

CLASS ACTION COMPLAINT

the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

83.    Specifically, the Preliminary Proxy fails to provide material information concerning the financial projections prepared by Syntel management. This is of particular note because Goldman Sachs relied on Syntel's projections with respect to its valuation analyses. Specifically, the Preliminary Proxy fails to disclose the material line items, including free cash flows for the following metric:

          i.    EBITDA;

84.    Moreover, while the Preliminary Proxy indicates that the Goldman Sachs, in performing its *Illustrated Discounted Cash Flow Analysis*, relied upon "estimates of unlevered free cash flow for the Company for the second half of 2018 through fiscal year-end 2023, as reflected in the Management Projections," the Preliminary Proxy fails to provide these metrics to Syntel stockholders.

85.    Additionally, the Preliminary Proxy provides non-GAAP financial metrics, including the above-mentioned metrics of EBITDA, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics, as described above.

86.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

87.    Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of Syntel are unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs' financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

88.    In the Preliminary Proxy, Goldman Sachs describes its respective fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions

CLASS ACTION COMPLAINT

fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.   Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

89.   With respect to the *Selected Companies Analysis*, the Preliminary Proxy fails to disclose the following:

    a.   The specific benchmark multiples for each analyzed comparable company

90.   With respect to the *Illustrative Present Value of Future Share Price Analysis*, the Preliminary Proxy fails to disclose the following:

    a.   The specific inputs and assumptions used to calculate the illustrative discount rate of 8.8%.

91.   With respect to the *Illustrative Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

    a.   the specific inputs and assumptions used to calculate the perpetuity growth rates of Syntel ranging from 2.0 % to 3.0%;

    b.   the specific inputs and assumptions, including the weighted average cost of capital, used to calculate the discount rate range of 8.0% to 9.5%;

    c.   "Estimates of unlevered free cash flow for the Company for the second half of 2018 through fiscal year-end 2023, as reflected in the Management Projections," upon which the analysis relied, as stated in the Preliminary Proxy.

92.   With respect to the *Transactions Premia* analysis, the Preliminary Proxy fails to disclose the following:

    a.   The reasoning to include only data from one previous acquisition;

    b.   The specific nature and names of the entities involved in the analyzed prior acquisition;

93.   These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

94.     Without the omitted information identified above, Syntel's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Syntel's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against Defendants Desai and Sethi)

95.     Plaintiff repeats all previous allegations as if set forth in full herein.

96.     The Co-Founders have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders and have acted to put their personal interests ahead of the interests of Syntel's public stockholders.

97.     By the acts, transactions and courses of conduct alleged herein, the Co-Founders, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Syntel.

98.     As demonstrated by the allegations above, the Co-Founders failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Syntel by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Syntel to its public stockholders.

99.     Indeed, the Co-Founders have accepted an offer to sell Syntel at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

100.     Moreover, the Co-Founders breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed vote on whether to approve the Merger.

101.     The Co-Founders dominate and control the business and corporate affairs of Syntel, and are in possession of private corporate information concerning Syntel's assets,

business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Syntel which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

102.    By the acts, transactions and courses of conduct alleged herein, the Co-Founders unfairly deprived Plaintiffs and other members of the Class of the true value of their investment in Syntel in a process that is not entirely fair.

103.    As a result of the actions of Defendants, Plaintiffs and the Class did not receive their fair portion of the value of Syntel's assets and businesses and were prevented from obtaining a fair price for their common stock in an unfair transaction

104.    As a result of the actions of the Co-Founders, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Syntel's assets and have been and will be prevented from obtaining a fair price for their common stock.

105.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

106.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Aiding and Abetting Defendants Desai and Sethi's Breach of Fiduciary Duties**

**(Against Defendants Ranade, Choksi, Doeke, Khanna, Mashruwala, Sahney, Schlaybaugh, Syntel, Inc., and Green Merger Sub, Inc.)**

107.    Plaintiffs repeat and reallege each allegation set forth above as if fully set forth herein.

108.    Defendants Ranade, Choksi, Doeke, Khanna, Mashruwala, Sahney, Schlaybaugh, Syntel, Inc., and Green Merger Sub, Inc. knowingly participated in the Co-Founder's breaches of

fiduciary duty described above by knowingly taking steps to aid and abet the Co-Founders breaches of fiduciary duty, and rendered substantial assistance to the Co-Founder's breaches of fiduciary duty.

109. As a result of Defendants Ranade, Choksi, Doeke, Khanna, Mashruwala, Sahney, Schlaybaugh, Syntel, Inc., and Green Merger Sub, Inc.'s aiding and abetting the Co-Founder's breaches of fiduciary duty, Plaintiffs and Syntel public stockholders have been harmed.

**THIRD COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

110. Plaintiff repeats all previous allegations as if set forth in full herein.

111. Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

112. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

113. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

CLASS ACTION COMPLAINT

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

114.    The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

115.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

116.    The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

117.    The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

118.    Plaintiff repeats all previous allegations as if set forth in full herein.

119.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at

management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

120.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

121.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Syntel's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

122.    The Individual Defendants acted as controlling persons of Syntel within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Syntel to engage in the wrongful

conduct complained of herein.   The Individual Defendants controlled Syntel and all of its employees.   As alleged above, Syntel is a primary violator of Section 14 of the Exchange Act and SEC Rule 14d-9.   By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.     Enjoining the Proposed Transaction;

C.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.     Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Syntel and obtain a transaction which is in the best interests of Syntel and its stockholders;

F.     Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

CLASS ACTION COMPLAINT

Date:  August 16, 2018

By:   /s/*Anthony L. DeLuca* (P64874)
      **ANTHONY L. DELUCA, PLC**
      14950 East Jefferson Avenue, Suite 170
      Grosse Pointe Park, MI 48230
      Tel:     (313) 821-5905
      Fax:     (313) 821-5906
      Email: anthony@aldplc.com
      Liason counsel for Plaintiff

**OF COUNSEL**

**BRODSKY & SMITH, LLC**
Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Tel:     (610) 667-6200
Fax:     (610) 667-9029
Email: esmith@brodskysmith.com
        mackerman@brodskysmith.com

CLASS ACTION COMPLAINT